55 F.3d 1232
 In re PRODUCTION STEEL, INC., Debtor.
UNITED STATES of America, Intervenor-Appellee,
v.
Keith M. LUNDIN; Mark V. McFeeley; William L. Norton;
George C. Paine, II; Hugh Robinson, Jr.; and
Arthur N. Votolato, Intervenors-Appellants.
 No. 94-5285.
 United States Court of Appeals,
Sixth Circuit.
 Argued & Submitted May 4, 1995.
Decided June 8, 1995.
 
 Michael E. Robinson (argued and briefed), U.S. Dept. of Justice, Civ. Div., William Kanter, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, DC, for U.S.
 Ann Hart Coulter (briefed), Adam Walinsky (briefed), Kronish, Lieb, Weiner & Hellman, New York City, for Keith M. Lundin, Mark V. McFeeley, William L. Norton, George C. Paine, II, Hugh Robinson, Jr., Arthur N. Votolato.
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges; CHURCHILL, District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiffs, six United States bankruptcy judges, appeal the District Court's reversal of the Bankruptcy Court's award of attorney fees to plaintiffs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412. Plaintiffs intervened in a 1985 bankruptcy proceeding to defend the constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "Act"). In 1993, plaintiffs petitioned the Bankruptcy Court for fees. The District Court held that their petition for fees was filed over seven years after the final judgment and, therefore, was untimely under EAJA. For the following reasons, we affirm.
 
 I. Facts
 
 2
 This case arises from plaintiffs' efforts to defend the constitutionality of the Act. On July 20, 1984, plaintiffs filed suit in the District of Columbia against the Director of the Administrative Office of the United States Courts (the "Director"), challenging the Director's declaration that the Act violated the appointments clause of the Constitution.[1] Meanwhile, a bankrupt debtor in California challenged the authority of the bankruptcy judge presiding over her case. See In re Benny, 44 B.R. 581 (N.D.Cal.1984), dismissed in part, aff'd in part, 791 F.2d 712 (9th Cir.1986). Both the plaintiffs and the United States sought to intervene in Benny, and filed a joint motion to stay the proceeding in the District of Columbia. The motion was granted.
 
 
 3
 Subsequently, parties in other bankruptcy proceedings challenged the constitutionality of the Act. The United States intervened in each of those proceedings. Plaintiffs also appeared in each proceeding--including the Production Steel proceeding for which they are now seeking fees--either as intervenors or amici. The constitutionality of the Act was upheld in each of the proceedings. In 1988, the District Court for the District of Columbia dismissed the case as moot. See Lundin v. Mecham, No. 84-2237 (D.D.C. Nov. 29, 1988).
 
 
 4
 Plaintiffs filed a petition for fees pursuant to EAJA in the District of Columbia, seeking to recoup legal costs for each bankruptcy proceeding in which they had appeared. Plaintiffs argued that their appearances in those proceedings were instrumental to the final disposition of their case in the District of Columbia. Although the District Court denied plaintiffs' application, the District of Columbia Circuit reversed. The Court held that plaintiffs were prevailing parties in the District of Columbia action, and that the government's position was not substantially justified. See Lundin v. Mecham, 980 F.2d 1450, 1461 (D.C.Cir.1992). However, the Court denied plaintiffs' claims for fees incurred in other jurisdictions, holding that "the statute expressly forbids the award of fees in actions over which the court lacks jurisdiction. Thus, the proper place to bring a claim for fees under EAJA is in the circuit in which the work was done." Lundin, 980 F.2d at 1461 (citations omitted).
 
 
 5
 Plaintiffs subsequently petitioned the Bankruptcy Court for the Middle District of Tennessee for the fees they incurred by intervening in the Production Steel bankruptcy case. Production Steel had filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code on April 22, 1982. Subsequently, Production Steel commenced a voidable preference adversary proceeding against Bethlehem Steel. Bethlehem Steel challenged the constitutionality of the Act as one of its defenses. The Bankruptcy Court notified the United States Attorney General of the constitutional challenge. The United States intervened, asserting that the Act was unconstitutional. Plaintiffs then also intervened. Upon motion of the parties, the District Court granted a partial withdrawal of the preference action from the Bankruptcy Court, allowing the District Court to rule on the constitutionality of the Act. On April 17, 1985, the District Court upheld the constitutionality of the Act. See In re Production Steel, Inc., 48 B.R. 841, 849 (M.D.Tenn.1985). The United States and Bethlehem appealed the District Court's decision, but the appeal was voluntarily dismissed on August 14, 1985. On December 12, 1985, the Bankruptcy Court entered a final order in the voidable preference action.
 
 II. Analysis
 
 6
 Congress enacted EAJA out of concern that "the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation." Pierce v. Underwood, 487 U.S. 552, 575, 108 S.Ct. 2541, 2555, 101 L.Ed.2d 490 (1988) (Brennan, J., concurring). EAJA provides for attorney fees to the "prevailing party" in litigation against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A). To collect fees pursuant to EAJA, a party must submit an application "within thirty days of final judgment in the action." Id. Sec. 2412(d)(1)(B). " '[F]inal judgment' means a judgment that is final and not appealable, and includes an order of settlement." Id. Sec. 2412(d)(2)(G).
 
 
 7
 Plaintiffs argue that they did not become prevailing parties until November 29, 1988, when the action in the District of Columbia was dismissed as moot. Plaintiffs contend that even after the District Court's ruling in Production Steel, which upheld the constitutionality of the Act, the Director still could have withheld their salaries; hence, they had not yet prevailed. In essence, plaintiffs are urging this Court to hold that they are prevailing parties in Production Steel based upon relief which they achieved in another jurisdiction, three years later. Plaintiffs misconstrue EAJA. The requirement in section 2412(d)(1)(B) that plaintiffs apply for attorney fees "within thirty days of final judgment in the action" demonstrates that plaintiffs' status as prevailing parties must be evaluated with respect to the action for which they are seeking fees. If plaintiffs were not prevailing parties when a final judgment was rendered in Production Steel, then, a fortiori, hey are not entitled to attorney fees under EAJA. Stated another way, plaintiffs cannot base their status as prevailing parties in Production Steel upon the date that they achieved relief that was never requested--nor could have been granted--in Production Steel.
 
 
 8
 Plaintiffs' reliance on the findings of the District of Columbia Court of Appeals in Lundin is misplaced. In Lundin, the Court reasoned that plaintiffs prevailed in that action because "the Six Judges received a significant part of the relief they sought in the suit below. They continued to serve as bankruptcy judges with no break in service; the Director agreed to pay their salaries; and their pensions and other benefits remained secure." 980 F.2d at 1457. The Court held that plaintiffs did not prevail until the District of Columbia action was dismissed as moot--upon motion by the Director--on November 29, 1988. But the Court rejected plaintiffs' argument that "the related [bankruptcy] cases were part and parcel of the case below so that the whole volume of litigation comprised a single litigation unit." Id. at 1461-62.[2] Indeed, the Court held that "the District Court for the District of Columbia did not have jurisdiction over the related cases; those cases were neither an essential step in connection with, nor in any way controlling in the prosecution of, the suit below." Id. at 1463.[3]
 
 
 9
 Plaintiffs next argue that the Bankruptcy Court's ruling on the voidable preference claim in Production Steel on December 12, 1985 was not a final judgment for purposes of EAJA because the ruling did not dispose of the entire bankruptcy case.[4] Plaintiffs contend that the District Court mistakenly defined finality as the point at which the ruling could no longer be appealed. EAJA, however, expressly defines final judgment as "a judgment that is final and not appealable." 28 U.S.C. Sec. 2412(d)(2)(G). Furthermore, this Court has held that an order that conclusively determines a separable dispute over a creditor's claim is a final order for purposes of appeal if it is a "final determination of the rights of the parties to secure the relief they seek in [the] suit." In re Vause, 886 F.2d 794, 797 (6th Cir.1989) (quoting In re Texas Extrusion Corp., 844 F.2d 1142, 1155 (5th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988)). See also In re Cottrell, 876 F.2d 540, 541-42 (6th Cir.1989). The December 12, 1985 order was a final determination of the voidable preference claim against Bethlehem Steel. Accordingly, the order was a final judgment for purposes of EAJA.
 
 
 10
 Finally, plaintiffs argue that denial of their fee application in Production Steel will leave them "to fall between the cracks of conflicting rulings." The District of Columbia Court of Appeals, however, never ruled on the merits of plaintiffs' claim for attorney fees in the related bankruptcy cases, nor could it. See Lundin, 980 F.2d at 1461. There was nothing to prevent plaintiffs from seeking an EAJA fee after the final order in the preference action in which the District Court upheld the constitutionality of the Act.
 
 III. Conclusion
 
 11
 For the foregoing reasons, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 In Lundin v. Mecham, 980 F.2d 1450 (D.C.Cir.1992), the District of Columbia Court of Appeals reviews the history of the Act, which was enacted after the Supreme Court held that the Bankruptcy Reform Act of 1978 was unconstitutional in Northern Pipeline Construction Company v. Marathon Pipe Line Company, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)
 
 
 [2]
 The Court also questioned whether plaintiffs were proper parties in the related bankruptcy cases for purposes of EAJA. 980 F.2d at 1461. Although this Court is doubtful that plaintiffs' status as intervenors in Production Steel fits the definition of "party" under EAJA, it is unnecessary for us to address that question
 
 
 [3]
 Even if we were to adopt plaintiffs' assertion that they did not become prevailing parties until November 29, 1988, when the District of Columbia case was dismissed as moot, their application would still be untimely. Plaintiffs did not file their application for fees in the Bankruptcy Court until 1993, more than thirty days after the dismissal of the District of Columbia action became final
 
 
 [4]
 At the time that plaintiffs filed their application for EAJA fees, the Production Steel bankruptcy case was still ongoing